BOB STUNGIS, DOING BUSINESS AS BOB'S KUSTOM BODY SHOP, APPELLEE, v. UNION PACKING COMPANY OF OMAHA, INC., A NEBRASKA CORPORATION, APPELLANT.

241 N. W. 2d 660

Filed May 12, 1976. No. 40297.

D. C. Bradford, III, and John B. Ashford of Bradford, Bloch & Coenen, for appellant.

Martin A. Cannon of Matthews, Kelley, Cannon & Carpenter, for appellee.

Heard before SPENCER, McCOWN, and BRODKEY, JJ., and MURPHY and COADY, District Judges.

BRODKEY, J.

This case comes to this court on an appeal by the de-

fendant, Union Packing Company, Inc., from a jury verdict and judgment entered thereon in favor of the plaintiff, Bob Stungis, doing business as Bob's Kustom Body Shop, in the amount of $18,000, representing damages allegedly sustained by plaintiff as a result of defendant's breach of contract. We affirm.

Plaintiff, Stungis, owned an industrial tract in Omaha, part of which was the site of his auto repair shop and part of which was vacant. Plaintiff's land, on its north and west sides, was adjacent to land owned by defendant, Union Packing Company, on which defendant's packing house was located. In 1969, Union Packing Company made plans to construct a new building on its property, which would extend close to the boundary line between its property and plaintiff's property to the south thereof. For that purpose, it sought plaintiff's permission to excavate part of plaintiff's land near the boundary line between the two properties, and, on or about December 3, 1969, plaintiff and defendant entered into a written agreement under the terms of which defendant was given permission to use the north 15 feet of plaintiff's lot for the purpose of excavation and storing dirt. As part of that agreement, defendant specifically agreed to restore plaintiff's land to its original condition upon completion of the construction work on defendant's own land. During the negotiations between the parties, Stungis made it clear that he wanted the land restored to its original condition as he planned to build an addition to his auto shop, and defendant and its agents were aware of that fact. Between 1969 and 1972, defendant was engaged in the construction of the addition to its plant, and during that period removed soil from plaintiff's property and stored it in a vacant lot near the construction site. During the course of the excavation, defendant excavated to depths as great as 30 feet below the original surface of plaintiff's land. Upon completion of its construction work, defendant refilled the hole it had excavated on plaintiff's property.

Later, when Stungis was preparing to build his new body shop, he was informed that soil tests revealed the defendant had backfilled his property with uncompacted debris and that the soil was not uniform enough in the area involved to support a concrete slab floor building, and that it would be necessary to reexcavate and refill the hole to restore the land to its original condition. He then filed suit against the defendant, alleging a breach of contract to restore the property to its original condition and alleging that as a result of defendant's failure to refill the excavation with clean and compacted fill, the value of the property was reduced from $65,000 to $45,000; and he prayed for damages in the amount of $20,000. He subsequently filed an amended petition and a second amended petition, modifying the allegations of before-and-after value of the property, but leaving the prayer for $20,000 damages unaltered. In its amended answer, defendant admitted the execution of the written contract on or about December 3, 1969, but alleged that it had performed all the conditions of the written agreement which it was required to perform, and denied the other allegations contained in plaintiff's second amended petition.

Trial was had to a jury on June 12 and 13, 1975. During the trial, plaintiff did not introduce evidence with respect to the diminution of the value of the property; but rather, over the objection of the defendant, he was permitted by the court to introduce evidence concerning the cost of repair of the property. An expert witness for plaintiff testified that the cost of restoring the property to its original condition would be $18,000.

Defendant's principal defense to the action on the matter of damages was that plaintiff had suffered no damages; and to support this proposition it adduced evidence from James Casperson, an architect for Union Packing Company, who testified that, in his opinion, the soil at the filled site was two and one-half times stronger than that on the original ground before the excavation.

The only other evidence on damages adduced by defendant during trial was the testimony of one witness that there were some bricks in the soil at the northwest part of the property and that it would take $1,900 to clean the soil in that area.

At the close of the evidence, plaintiff moved the court for leave to amend his petition to conform to the proof, in the manner set out in his requested instruction No. 1. Part of that requested instruction states as follows: "The plaintiff alleges that the reasonable cost of restoring the land to it prior condition of usefulness is $18,000.00." Counsel for defendant objected generally to the amendment requested, without specifically stating his reasons for his objection at that time. The court granted plaintiff's request for the amendment. The purpose of the requested amendment was to permit the court to instruct the jury on damages based on the evidence in the record, which was limited to testimony of the cost of repair, and not the before-and-after value of the property as alleged in plaintiff's second amended petition. In its instructions, the court first told the jury that if it decided the plaintiff should recover, it would be its duty to award any damages as would fairly and reasonably, but not excessively, compensate for the injury or loss which had been sustained as a direct and proximate result of the breach of contract; and in the next instruction added: "If plaintiff's land was damaged and can at reasonable cost be restored to substantially its condition immediately before the damage occurred, plaintiff is entitled to recover the cost of making such changes necessary to restore the property to substantially its condition immediately before the soil was excavated." The jury brought back a verdict of $18,000, and the court entered judgment on the verdict. Motion for a new trial having been overruled, defendant perfected its appeal to this court.

In its brief on appeal, defendant sets out 18 assignments of error, only a few of which are discussed in its

brief. Rule 8a2(3) of the Revised Rules of the Supreme Court, 1974, provides that consideration of the cause by this court will be limited "to errors assigned and *discussed.*" (Emphasis supplied.) See, also, State v. Hoffmeyer, 187 Neb. 701, 193 N. W. 2d 760 (1972). In accordance with the foregoing rule, we shall consider only those assignments argued or discussed by defendant.

The principal assignment of error discussed by defendant in its brief was that the court erred in sustaining plaintiff's motion to amend his petition to conform with the proof on the last day of the trial. Union Packing Company claims that it was unfairly surprised by the amendment and was prejudiced by it. Intertwined with this assignment is the defendant's claim that the testimony relative to the cost of restoration of the property given by plaintiff's expert witness was improperly admitted over objection, and could not serve as a basis for the amendment. Defendant also assigns as error and argues that the court erred in sustaining plaintiff's objection to questions propounded to Stungis by defendant about the original purchase price of the subject property, and as to offers to sell or purchase his property.

It is clear from the status of the pleadings as of the commencement of the trial that plaintiff worded his prayer for damages in terms of diminution of value, but that the evidence adduced by him during the trial was on cost of repair, although, by stipulation, it was agreed that plaintiff's property had a value of $45,000 before it was damaged. Putting aside for the moment the fact that the court before instructing the jury permitted plaintiff to amend his petition as to damages to conform with the proof that the cost of repair was $18,000, we first address ourselves to the question of the proper measure of damages to be applied under the facts of this case.

It is important to note that plaintiff brought his action in this case on the basis or theory of defendant's breach of contract, and not upon any theory of tort liability.

The law is well established that the measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed. Numon v. Stevens, 162 Neb. 339, 76 N. W. 2d 232 (1956); Wendt v. Yant Constr. Co., 125 Neb. 277, 249 N. W. 599 (1933); Gallagher v. Vogel, 157 Neb. 670, 61 N. W. 2d 245 (1953); Koyen v. Citizens Nat. Bank, 107 Neb. 274, 185 N. W. 413 (1921). Numon v. Stevens, *supra,* involved a contract to move a house, which was subsequently damaged during the moving process. The court held that the fair and reasonable value of the cost of repair required to restore the house to the same condition it was in prior to being moved was the proper measure of damages. The rule is well settled that where a construction contract is substantially performed, the damage which the owner suffers because of defective workmanship or unsuitable materials used is measured by the reasonable cost of remedying the defects. Henggeler v. Jindra, 191 Neb. 317, 214 N. W. 2d 925 (1974); Jones v. Elliott, 172 Neb. 96, 108 N. W. 2d 742 (1961). While there may possibly be some question as to whether the contract in the case under consideration is a construction contract, we believe it is at least analogous to a construction contract. We conclude, therefore, that the proper measure of damages in the present case, which is based upon the theory of a breach of contract, was the reasonable cost of repairs to restore the property to its original condition.

We have held that where the facts stated in a petition show that the plaintiff is entitled to damages of some sort, it is not a fatal error that the pleader has mistaken the rule by which such damages should be measured. Dill v. Farmers Co-operative Co., 132 Neb. 256, 271 N. W. 692 (1937); Rothery v. Pounds, 150 Neb. 25, 33 N. W. 2d 347 (1948). This being so, the court did not commit error in permitting plaintiff to amend his petition to conform with the proof at the conclusion of the

evidence. We believe that such an amendment was not only permitted, but required, to inform the jury of the correct measure of damages. The applicable statutory section is section 25-852, R. R. S. 1943, which provides as follows: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment." Under that section, the right to amend pleadings rests within the sound discretion of the trial court and the allowing of the amendment will not be error unless prejudice resulted. State Securities Co. v. Corkle, 191 Neb. 578, 216 N. W. 2d 879 (1974); McCarty v. Morrow, 173 Neb. 643, 114 N. W. 2d 512 (1962). We conclude that the amendment did not change plaintiff's cause of action, which was based on breach of contract both before and after the amendment, nor did it change the quantum of proof; also, it did not change defendant's defense, as defendant's theory throughout the trial was that plaintiff suffered no damages because of the fact that the soil after compaction was better and stronger than it was in its natural state.

Defendant claims it was surprised by the change in the measure of damages sustained by plaintiff. Defendant was aware of the plaintiff's introduction of restoration cost evidence during the 2-day trial. After the allowance of the amendment by the court, its counsel did not ask to submit any evidence of his own on the cost of restoration, nor did he ask for a continuance. He contented himself with his prior exception to the ruling of

the court. See Folken v. Union Pacific R.R. Co., 122 Neb. 193, 239 N. W. 831 (1932). In arguing plaintiff's motion for a directed verdict on the amount of damages, defendant's counsel in his counterargument did not raise the absence of evidence of before-and-after damages, or claim that was the only correct measure of damages. Finally, and significantly, the record reveals that the court held a conference in chambers to consider its proposed instructions to the jury, at which conference counsel for both parties were present. The proposed instructions presumably included the court's instructions to the jury relative to damages, previously quoted, in which the court clearly instructed on the cost of repair as the measure of damages in the event the jury found for the plaintiff on the issue of liability. The attorneys were obviously provided with copies of the court's proposed instructions prior to the hearing, as counsel for defendant during the hearing referred to one of the instructions proposed by the court, which, however, did not deal with damages. At that hearing, counsel for the defendant voiced no objections to the court's proposed instructions relative to damages, nor to the theory on which the instructions were framed; nor, in fact, did he object to any of the court's instructions. His failure to object to the instruction on damages suggests that he did not consider the change in the measure of damages to be prejudicial. We do not believe that the defendant was either surprised or prejudiced by the action of the court in permitting plaintiff to amend his petition to conform to the proof adduced during the trial; and that the court acted in furtherance of justice in permitting the amendment.

We have considered defendant's contentions that it should have been permitted to introduce evidence of Stungis' purchase price of his property, and also as to offers from others to buy his property, and whether he had ever listed it for sale. We find that the action of the court in excluding the answers to the questions pro-

pounded was not prejudicial, particularly in view of the amendment permitted by the court as to the applicable measure of damages, and that the contentions of the defendant are without merit.

The judgment of the District Court is affirmed.

AFFIRMED.

MURPHY, District Judge, concurring in the result.

I do not disagree with the result reached here, but I am unable to agree with much of what is said in arriving at the result, and I am concerned about inferences which might be drawn from the opinion.

The general rule regarding damages to soil of the nature involved herein is that their proper measure is any difference between the before-and-after values. Hunt v. Chicago, B. & Q. R.R. Co., 180 Neb. 375, 143 N. W. 2d 263; Beveridge v. Miller-Binder, Inc., 177 Neb. 734, 131 N. W. 2d 155; Applegate v. Platte Valley P. P. & Irr. Dist., 136 Neb. 280, 285 N. W. 585. I do not agree that the petition alleges a cause of action ex contractu rather than ex delicto is necessarily material. Quest v. East Omaha Drainage Dist., 155 Neb. 538, 52 N. W. 2d 417. This case is distinguishable, however, from Beveridge v. Miller-Binder, Inc., *supra,* by virtue of the substance of the contract herein involved, as hereinafter discussed.

Here the jury was instructed that, before plaintiff could recover, he was required to prove: "That the parties entered into a valid agreement by the terms of which the defendant was to refill the excavated area on plaintiff's property with clean, well-compacted soil *and thereby to restore the land to its original condition.*" (Emphasis added.) It is important to note also that the contract involved did not contemplate any improvement to or upon plaintiff's land, but constituted only the grant of a temporary license or easement to defendant. The instruction defining the measure of damages was consistent with that burden of proof. Plaintiff was entitled

to recover for the loss of his bargain, rather than simply the damages done to his real estate.

I fear the opinion is subject, at least by reasonable implication, to extension to fact situations far beyond those here. A measure of damages based upon the re-doing of all that was done is, I submit, inconsistent with substantial performance doctrines or theories. I am not inclined to believe that, in an ordinary "construction contract" case, evidence of damages similar to that ad-duced by the plaintiff in this case would warrant sub-mission of the case to the jury, regardless of what may have occurred during the course of an instructions con-ference.

In my view of the case plaintiff must be considered to have met his burden of pleading and proving an ap-propriate and reasonable measure of reasonable dam-ages only in light of the somewhat peculiar nature of the case and the favorable jury verdict. Any disparity between the difference between the before-and-after value and the cost of restoration would have been ma-terial to the reasonableness of the measure of damages. Evidence of an offer to sell real estate is not, however, sufficient evidence of the value of the real estate to raise that factual issue.