**Ella GENTRY et al., Appellants,**

**v.**

**Arthur and Estelle SELLERS, Appellees.**

**No. 17586.**

Court of Civil Appeals of Texas, Dallas.

May 21, 1971.

Rehearing Denied June 18, 1971.

Harlan Harper, Jr., Hal Potts, Dallas, Wyatt W. Lipscomb, Garland, Fanning & Harper, Dallas, for appellants.

Roland Boyd, Boyd, Veigel & Gay, Inc., McKinney, for appellees.

CLAUDE WILLIAMS, Chief Justice.

On July 8, 1969 Wilson McDonald, eighty-eight years of age, died in Collin County, Texas. On July 9, 1969 Arthur Sellers, and wife Estelle, filed for probate in the County Court of Collin County a document designated as the last will and testament of Wilson McDonald. This instrument, dated July 20, 1965, designated Mr. and Mrs. Sellers as "Co-Independent Executor-Executrix" and named them as

sole beneficiaries of his entire estate. Their daughter, Linda Lee Mahan, was named conditional beneficiary.

Alleging that Wilson McDonald lacked testamentary capacity to execute a will and that he had been caused to sign the instrument because of undue influence practiced upon him by Mr. and Mrs. Sellers, Ella Gentry, Mildred Harvey, A. V. Gentry, Cecil Gentry and others, being heirs at law under the statutes of descent and distribution, filed their contest to the probate of the purported will. The County Court of Collin County, sitting as a Probate Court, entered its order granting the will to probate. The contestants appealed this order to the District Court of Collin County where they renewed their attack upon the same grounds as had been asserted in the Probate Court. The case was submitted to the jury on the sole issue of testamentary capacity. The jury found that Wilson McDonald did have testamentary capacity to execute the instrument on July 20, 1965. Based upon this verdict the trial court rendered judgment denying the contest and admitting the will to probate.

Appellants seek reversal of the judgment in five points of error. In their first three points appellants urge that they were deprived of a fair and impartial trial because the trial judge refused to permit them to take discovery depositions of Mr. and Mrs. Sellers, as well as other witnesses, and they were thereby deprived of their right to adequately prepare the case for trial. They also contend that the trial court should have granted them a thirty day postponement or continuance so that, during such period of time, they could have taken the discovery depositions under orders of the court.

The chronological order of events prior to actual trial may be briefly summarized: Appeal from the probate order was filed in the district court on November 11, 1969. On April 28, 1970 a subpoena duces tecum was issued and served upon Mr. and Mrs. Sellers ordering them to appear on May 21, 1970 in the courthouse at McKinney, Texas and to bring with them and produce books, papers, documents and tangible things such as bank records, cancelled checks, records of notes received, notes paid, records relating to real estate transactions, deeds and copies of deed of property bought for or on behalf of Mr. McDonald since 1962, together with all records of correspondence relating to transactions with or on behalf of the deceased, Wilson McDonald, and to give evidence at the instance of contestants. On May 4, 1970 the District Clerk of Collin County, Texas issued commissions to take the oral depositions of Mr. and Mrs. Sellers on May 21, 1970. By agreement of counsel the time for taking the depositions was changed to May 28, 1970.

On May 28, 1970 counsel for contestants appeared at the courthouse at McKinney and Mr. and Mrs. Sellers, accompanied by their counsel, also appeared. The record before us contains a transcript of the proceedings which then took place. At the beginning it was ascertained that counsel for contestants represented all the heirs in law of Wilson McDonald with the exception of two who lived in California. Upon being advised that counsel for contestants did not represent these two heirs Mr. Boyd, attorney for the proponents, stated that he would not permit Mr. and Mrs. Sellers to give their oral depositions without receiving a general waiver of the provisions of Article 3716, Vernon's Ann.Civ.St. of Texas, commonly called the Dead Man's Statute, from all of the heirs of Wilson McDonald, including the two in California who were not represented by counsel. Counsel for contestants stated that they would be bound by the provisions of Article 3716 by calling and taking the depositions of the adverse parties but that, not representing the heirs in California, they could not give a waiver on behalf of those people. Thereupon the following transpired:

"MR. BOYD: We refuse to submit Mr. and Mrs. Arthur Sellers for a deposition

since the record shows that Mr. Lipscomb and Mr. Potts have been in contact with the two heirs in California and they say that they're not representing them. We refuse to submit these witnesses for this deposition until the Dead Man's Statute is waived by all parties to the—by all heirs of Wilson McDonald.

"MR. POTTS: It's my understanding, then, that you're refusing to present them in spite of the subpoena and the commission?

"MR. BOYD: They're here in the room at this time, but we're refusing to proceed under these conditions.

"MR. POTTS: And the reason is because certain heirs whom we would assert are not necessary or indispensable parties and are not represented by Counsel in this room have not, therefore, waived the Dead Man's Statute as we're willing to waive it with reference to the heirs who are presently parties to the lawsuit, is that correct?

"MR. BOYD: That's correct."

The depositions of Mr. and Mrs. Sellers were not taken and thereafter on June 18, 1970 counsel for contestants filed their motion, reciting the refusal to give the depositions, and asking the trial court, pursuant to Rule 215a, Vernon's Texas Rules of Civil Procedure, to require Mr. and Mrs. Sellers to give their testimony. Apparently a hearing was had on the motion on Friday, June 19, 1970, at which time the court refused to require the depositions to be taken. On Monday, June 22, 1970, contestants filed their motion for continuance. Paragraph III of said motion reads as follows:

"These contestants would further show that in view of the Court's refusal to allow the deposition of Mr. and Mrs. Sellers to be taken in its order of this last Friday that they cannot safely go to trial."

In their verified motion contestants ask the court to continue the case for a period of thirty days until they are able to secure the depositions of Mr. and Mrs. Sellers, as well as other witnesses. This motion was overruled on June 22, 1970 by an order signed by the district judge who then directed the trial to proceed on its merits that day. The case was tried on June 22 and June 23 during which time twenty-two witnesses were heard and documentary evidence was introduced. The case went to the jury late Tuesday, June 23, and a verdict was returned to the court at 10:08 p. m. on June 23.

■ We recognize the law to be that a determination of whether a deposition should or should not be taken is within the sound discretion of the trial court and before his ruling will be set aside there must be shown a clear abuse of discretion. Meyer v. Tunks, 360 S.W.2d 518 (Tex. Sup.1962) and Harris County v. Hunt, 388 S.W.2d 459 (Tex.Civ.App., Houston 1965, no writ). It is also well settled that the granting or refusal of a motion for continuance is also to be determined within the sound discretion of the trial court. However, when the record before us is viewed as a whole we are convinced, and so hold, that the trial judge did abuse his discretion in refusing to grant to appellants the privilege given by the rules to take the discovery depositions of Mr. and Mrs. Sellers and to extend to them a reasonable time prior to trial within which such depositions could have been taken.

The motion for continuance filed by appellants was duly verified and not controverted by appellees. The record is silent as to what reason or upon what basis the trial court interdicted the taking of the depositions of Mr. and Mrs. Sellers.

■ The case is a will contest and therefore the provisions of Art. 3716, V. A.C.S., referred to as the Dead Man's Statute, were clearly applicable. By the terms of this statute neither party in an action by or against the heirs or legal rep-

resentation of a decedent would be allowed to testify against the others as to any transactions with such decedent "unless called to testify thereto by the opposite party." It is settled law in Texas that where a party is called by the opposite party to testify by deposition he thereby waives the protection of the statute. Chandler v. Welborn, 156 Tex. 312, 294 S. W.2d 801 (1956) and McCormick and Ray, Texas Law of Evidence, 2d Ed., § 332, and cases therein cited. The appellants, contestants below, expressly acknowledged their waiver of the statutory provisions by electing to call Mr. and Mrs. Sellers, the opposite parties, to give their testimony in a discovery deposition. Though willing to accept the penalty of the statute they were prevented by what we consider to be an unreasonable and unjustified demand on the part of attorneys for appellees to gain the advantage of discovery depositions. As a condition precedent to allowing the testimony of their clients to be given, the attorneys for appellees demanded that a waiver of the Dead Man's Statute be made by all heirs of Wilson McDonald. It was made evident that two of these heirs were not represented by attorneys for appellants and not parties to the contest. The demand for a waiver by parties not present and not represented effectively prevented appellants from exercising a valuable privilege extended to them by the rules to take the discovery depositions. This becomes even more evident when the record discloses the close relationship between appellees and deceased during the later years of his life. Thus they became a veritable "gold mine" of possible information which might lead to evidence relevant to the issues of testamentary incapacity and undue influence. Appellees cite no cases in support of their action in demanding that counsel for appellants give them a general waiver of rights of those they did not represent as a condition for the taking of the depositions.

We see no lawful basis for such demand and we think that the trial court should have granted appellants' motion to require the depositions to be taken prior to trial.

That the privilege of taking discovery depositions, especially of adverse parties, is of inestimable value cannot be questioned. Texas was a pioneer in the matter of deposition practice. As early as 1846 our legislature provided for the taking of ex parte depositions. Thereafter in 1858, 1907 and 1919 progressive steps were taken by the legislature to extend the provisions for the taking of depositions. In this field of practice Texas led the federal court by nearly two decades. Although the statutes and rules in Texas, prior to 1957, principally contemplated the use of depositions for the purpose of obtaining evidence for trial, as a practical matter attorneys discovered the value of using depositions for purpose of discovery.*

For an efficient administration of justice nothing is more essential than liberal and effective provisions for pretrial discovery. The trial-by-battle techniques of the common law have been modified by procedures which seek to make litigation not merely a battle of wits between opposing counsel, but rather a genuine effort to arrive at the actually disputed issues by a frank disclosure of strength before trial. Texas rules and statutes have long offered a deposition practice which has accorded a breadth of pretrial investigation which has done much to improve the administration of justice. We think that the Supreme Court of the United States, in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), aptly stated the purpose and reason for deposition discovery rules, as follows:

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from

---

* Masterson, Adversary Depositions and Admissions Under Texas Practice, 10 SW Law Journal 107 (1956); Thode, Some Reflections on the 1957 Amendments to the Texas Rules of Civil Procedure Pertaining to Witnesses at Trial, Depositions, and Discovery, 37 Tex.L.Rev. 33 (1958).

inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise."

Here the appellants were clearly deprived of the valuable right and privilege afforded them by the rules. This was done not only by unreasonable demands by appellees' counsel but by the refusal of the trial court to implement the provisions of Rule 215a, T.R.C.P., and to grant appellants a reasonable time within which to take the depositions. We sustain appellants' Points 2 and 3.

In their fourth point of error appellants complain of the action of the trial court in refusing their timely request to include in the definition of "testamentary incapacity" the element of insane delusion. In their fifth point of error they complain of the action of the trial court in refusing to submit to the jury their requested special issue, together with appropriate instructions, relating to their asserted attack upon the will as being brought into existence by undue influence of appellees.

Since this case will have to be retried we deem it unnecessary to review the lengthy record to determine whether there is evidence of probative force which would require the trial judge to comply with appellants' requests as above stated. Upon another trial, if there is evidence that the testator at the time of the execution of the will was laboring under an insane delusion which influenced him to execute the will so as to dispose of his property in a way which he would not have done but for such delusion, then the court should, as a part of the definition of "testamentary incapacity" give the additional instruction relating to insane delusion as was approved by the Supreme Court in Lindley v. Lindley, 384 S.W.2d 676 (Tex.Sup.1964).

The submission of the issue and instruction relating to undue influence will likewise depend upon the testimony adduced upon another trial.

The judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.