JAMES M. OSBORNE AND KAREN M. OSBORNE, HUSBAND AND WIFE, APPELLANTS, V. MARIAN L. BRUNKEN, APPELLEE.

441 N.W.2d 182

Filed June 9, 1989.   No. 87-873.

Arthur R. Langevardt for appellants.

Michael E. Sullivan for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and McGINN, D.J.

FAHRNBRUCH, J.

Appellants, James M. and Karen M. Osborne, filed this law action in the Adams County Court to collect damages for an allegedly defective air-conditioning system in a residence they purchased under written contract from appellee, Marian L. Brunken, and Jacob B. Brunken.

The Osbornes were awarded an $856.55 judgment in the county court. Mrs. Brunken appealed the judgment to the Adams County District Court. Jacob Brunken, apparently her ex-husband, did not appeal, and the county court judgment

against him has become final.

The district court, acting in its appellate capacity, reversed the judgment and dismissed appellants' petition as against Marian Brunken. We affirm the rulings of the Adams County District Court.

On appeal of a law action from the county court to the district court and thereafter to the Supreme Court, each review is for error appearing on the record made in the county court. In a law action, factual determinations made in the county court will not be set aside by the district court or Supreme Court unless the findings are clearly wrong. When it comes to conclusions of law, the reviewing courts have an obligation to reach an independent conclusion. *Communications Workers of America v. Abrahamson*, 228 Neb. 335, 422 N.W.2d 547 (1988). See, also, Neb. Rev. Stat. §§ 24-541.06(1) (Cum. Supp. 1988) and 25-1911 (Reissue 1985).

On April 30, 1984, the Osbornes entered into a purchase agreement with Jacob and Marian Brunken to buy the Brunken home in Hastings, Nebraska. The purchase agreement recited in part:

> This offer is based upon my personal inspection or investigation of the premises and not upon any representation or warranties of condition by the Seller or his agent. Seller agrees to maintain, until delivery at closing, the heating, air conditioning, water heater, sewer, plumbing, electrical systems, and any built-in appliances in working condition.

The Osbornes were to close the sale and take possession of the property on or before July 31, 1984. The sale was closed and they took possession on July 7, 1984. The Osbornes did not move into the house until the first of August, since they were extensively remodeling the house in the interim. In mid-August, Mrs. Osborne turned on the air-conditioner. She testified that it ran, but did not cool the residence. She called Hastings Plumbing and Heating to add Freon to the unit.

After the Freon was added, Mrs. Osborne again turned on the air-conditioner. After running about 20 to 30 minutes, the air-conditioner "froze up" and discontinued running as "it kicked the breakers," according to Mrs. Osborne. She called

Hastings Plumbing again, and the employee who had put Freon into the unit returned, but could not get the unit working. Mrs. Osborne testified no cold air came into the house.

After four companies looked at the unit, the Osbornes obtained no firm bid for repairs of the system. They elected to install a new, larger air-conditioning unit, change the duct work, and install a dry well or floor drain. The Osbornes expended $3,151.91 for the new unit, the duct work, and labor. They then filed this action to recover that amount. The county court awarded the Osbornes the cost of the new ducts and their installation. It allowed nothing toward the purchase of a new air-conditioner, its installation, or the dry well installed to collect condensation from the air-conditioner.

Before signing the purchase agreement, the Osbornes inspected the home on two occasions. Mr. Osborne looked at the air-conditioning unit and saw that it was in place. He turned the switch and the blower worked. He testified that he asked Mrs. Brunken if the air-conditioner worked and "[s]he assured it cooled quite adequately." The Osbornes then entered into the purchase agreement with the Brunkens.

Mrs. Brunken testified that on July 6, 1984, when her dishwasher was being repaired, she checked all the appliances in the house, including the air-conditioner. She said she turned on the air-conditioning for about 20 to 30 minutes, and it ran and cooled. She further testified that the air-conditioning system was working on April 30, 1984, when she signed the purchase agreement and that it was in working condition and cooled the house while she lived there in June 1984. Mrs. Brunken said the air-conditioner ran no differently on July 7, 1984, than it had earlier in the summer or as it had always run since it was installed when the house was built some 19 years previously. Throughout those 19 years, the air-conditioner maintained the same ability to cool, according to Mrs. Brunken.

The issue is whether Brunken breached the condition of the purchase agreement requiring the air-conditioning system to be maintained in a working condition until the Osbornes took possession of the house. The Osbornes' petition alleged no fraud.

In *Rosenberry v. Beck*, 205 Neb. 664, 289 N.W.2d 523

(1980), and *Gunset v. Mossman*, 196 Neb. 529, 243 N.W.2d 783 (1976), this court considered language in purchase agreements almost identical to that in the agreement in the case before us. In *Rosenberry*, this court quoted from *Gunset* the following language defining "working condition":

> "The only reasonable interpretation of the words 'working condition' under the facts of this case is that the defendant agreed to deliver possession of the furnace in the same operating condition existing at the time the agreement was signed. The clause in dispute was not a warranty. Since no allegation is made that the boiler's condition worsened from the date the agreement was signed to the date the plaintiffs obtained possession, the plaintiffs received all they bargained for."

*Rosenberry, supra* at 666, 289 N.W.2d at 525.

When the Adams County District Court on appeal held in favor of Mrs. Brunken, it in effect determined that the trial court's judgment favoring the Osbornes was clearly wrong because the evidence was insufficient as a matter of law to support it. We agree with the district court for two reasons, either of which is sufficient to deny judgment in favor of the Osbornes. First, there was no allegation and no proof that the air-conditioning system worsened from the date the agreement was signed to the date the Osbornes took possession of the property. Mr. Osborne testified that prior to signing the purchase contract, he turned on the switch and the blower worked. Mrs. Brunken testified that on April 30, during June, and on July 6, 1984, the air-conditioner worked and that it worked no differently on July 7, 1984, when possession was given the Osbornes, than it had for the previous 19 years. After receiving possession of the property, the Osbornes did not turn on the air-conditioner for some 5 weeks. The evidence, as a matter of law, is insufficient to show that the unit was not damaged between the date of possession and the 5 weeks thereafter.

The thrust of the expert testimony adduced by the appellants only claimed that the air-conditioning system was improperly designed and installed and was inadequate to cool the house. When the expert first looked at the air-conditioning condensing

unit, it had been partially disassembled. The evidence reflects that another repairman hired by the Osbornes had partially dismantled the condensing unit. The expert testified: "And to even operate it, you would of had to spend at least two to three hours working on it to get it where it would operate again." He did not testify, as required in *Rosenberry*, that the working condition of the air-conditioning system worsened from the date the agreement was signed to the date the Osbornes took possession of the property. As a matter of law, the evidence was insufficient to show that the Osbornes did not receive that for which they bargained. As a matter of law, the evidence was insufficient to prove that the sellers breached their duty under the written contract to maintain the air-conditioner in working condition.

The second reason for setting aside the trial court's judgment favoring the Osbornes is that even if appellants had proved liability on the part of the sellers, as a matter of law, the evidence was insufficient to prove proper damages.

Where a seller breaches an agreement to maintain a mechanical system in working condition from time of sale to time of the buyer's possession, the buyer is entitled to recover the lesser of (1) the reasonable cost of placing the property in the condition it was in at time of sale or (2) the value the property would have had were it in the condition it was in at time of sale, minus its actual value, both measured as of time of possession. *Fink v. Denbeck*, 206 Neb. 462, 293 N.W.2d 398 (1980). See, also, NJI2d 4.49.

The trial judge was clearly wrong in awarding appellants the cost of installing new and larger duct work. There was no evidence that the duct work had worsened between the time of the purchase agreement and possession of the property by the Osbornes. The evidence was insufficient as a matter of law to prove the cost of repairing the old unit had it been proved to have not been in working condition at the time appellants were given possession of the property. Moreover, the Osbornes were not entitled to a new, larger, more efficient air-conditioning unit and new duct work. Even had the breach of contract been proven, there was no evidence of the diminution in value of the property between the date of sale and the date the Osbornes

took possession of the property.

The trial judge was clearly wrong in awarding the appellants a judgment. The Adams County District Court was correct in reversing the trial court's judgment as to Mrs. Brunken and in dismissing the lawsuit as to her.

None of the appellants' assignments of error have merit. The judgment of the Adams County District Court is affirmed.

AFFIRMED.